UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

CARLOS SCOTT                          CIVIL ACTION NO. 18-0628

                                      SECTION P

VS.

                                      JUDGE TERRY A. DOUGHTY

LAURA ROBERTS, ET AL.                 MAG. JUDGE KAREN L. HAYES

### REPORT AND RECOMMENDATION

Plaintiff Carlos Scott, a detainee at Jackson Parish Correctional Center proceeding pro se and in forma pauperis, filed the instant Complaint on April 30, 2018, under 42 U.S.C. § 1983. He names the following Defendants: Laura Roberts, Timmy Ducote, Andy Brown, Deanna Haris, Kevin Kelly, David Brazzell, Kristy Bennet, Scott Blackwell, an unknown physician, and LaSalle Corrections.[1]  For the following reasons, it is recommended that Plaintiff's claims against Timmy Ducote, Andy Brown, David Brazzell, Scott Blackwell, Kevin Kelly, and LaSalle Corrections be **DISMISSED WITH PREJUDICE**.[2]

### Background

Plaintiff is diabetic and claims that from April 15, 2018, the day he was incarcerated, to April 23, 2018, he could only eat around 65-75% of each meal served because the meals were

---

[1] This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the Court.

[2] The following claims should be retained: Plaintiff's claim against Nurse Laura Roberts concerning a lack of a knee brace; his claim against Deanna Harris for refusing care after he dislocated his knee; his claim against an unknown physician for refusing to treat his shoulder; his claims against Nurse Bennet and Deanna Haris for refusing to provide his prescribed pain medication; and his claims against Defendants Roberts and Bennet for failing to place him on a list of inmates who receive meals safe for diabetics.  The undersigned directed the Clerk of Court, in a separate Memorandum Order, to serve Plaintiff with summons forms for these claims.

comprised of approximately 25-35% rice and pasta, two starches Plaintiff cannot consume.  He asked Defendants Roberts and Bennet to place him on a "diabetic list," but both refused.  [doc. # 9, p. 7].  He "has had no blood pressure or blood sugar checks" since April 20, 2018, [doc. # 1, p. 3], he received no medication while he was deprived of safe meals, [doc. # 9, p. 3], and he suffers from "diabetic pain," [doc. # 9, p. 5].

Plaintiff claims, generally, that the nursing staff knows that he has diabetes, osteoarthritis, and problems with his ankle, shoulder, and knee because the staff has his medical records from his "previous stays at the facility."

Plaintiff also alleges that the nursing staff knew he frequently dislocated his knee prior to his incarceration.  He requested his knee brace, but Nurse Laura Roberts would not allow him to possess it.  [doc. # 9, p. 5].  As a result, he dislocated his knee on April 17, 2018.  A nurse, Jodie Davis, evaluated him approximately thirty-five minutes later: she checked his blood pressure, examined his knee, and provided Ibuprofen.  Plaintiff complains, however, that his "knee wasn't x-rayed," that he did not see a nurse the next day, that he did not see a physician until April 20, 2018, and that Defendant Deanna Harris caused the thirty-five minute delay by refusing to acknowledge or relay his pleas for care.

Plaintiff returned to "J dorm" in a wheelchair and was placed in "medical lockdown."  He alleges that he could not climb to the top bunk and that, after he asked Defendant Kelly for a bottom bunk, Kelly "said he didn't care."  [doc. # 9, p. 1].  Plaintiff was forced to sleep on a mat on the floor from April 18, 2018, to April 30, 2018.  He notified Defendants Ducote and Brazzell about his sleeping conditions, but neither intervened.

On April 18, 2018, before any medical professional evaluated Plaintiff's ability to walk,

2

Defendant Kelly took Plaintiff's wheelchair.  [doc. # 9, p. 1].  Plaintiff maintains that he could not walk because of his knee injuries and because he weighed 335 pounds.  He missed one lunch because he lacked a wheelchair: he asked Kelly for a lunch tray, but Kelly told him he had to walk to the cafeteria.  Kelly also threatened to mace him if he did not stand and walk.  *Id.*

On April 20, 2018, a physician evaluated Plaintiff's knee, checked his blood pressure, temperature, and blood sugar, and determined that Plaintiff could walk.  [doc. #s 1; 4, p. 7; 9, p. 3].  The  physician, however, refused to treat his shoulder, informing Plaintiff that he had to submit a sick-call form first.[3]  [doc. #s 4, p. 11; 9, p. 3].  Plaintiff also complains that the physician only "comes to the facility once a month."  *Id.*

Plaintiff "started receiving" additional medication on April 23, 2018.  He was "prescribed 600 mg [of] Ibuprofen 3X a day" for his back, but he only receives Ibuprofen twice each day.  The amount of Ibuprofen he receives helps his back pain, but he "constantly hurt[s]."  Plaintiff asked Defendant Blackwell about receiving a third dose and Blackwell responded, "I don't have anything on there" and "there hasn't been anything on here for you."  Plaintiff "finally got [Blackwell] to check the med cart and he saw that [Plaintiff] had Ibuprofen on the noon med cart and he apologized."  [doc. # 9, p. 8].  Plaintiff asked Nurse Bennet and Deanna Haris about receiving a third dose, but both ignored his question.  He is in pain "on a constant basis and only [has] a hot shower and Ibuprofen to help."  [doc. # 9, p. 5].

Plaintiff alleges that, while Nurse Roberts asked him about his shoulder on April 30, 2018, and that although he replied that his shoulder was "back in place," Roberts "said there is

---

[3] Plaintiff notes that he injured his shoulder prior to incarceration and that he was scheduled for physical therapy on April 16, 2018.

nothing we can do, we can't make it elastic." He complains that Roberts did not examine his shoulder or order an x-ray. [doc. # 9, p. 4].

Plaintiff seeks "proper medical treatment," a "diet suitable for diabetics," and $150,000.00 for his pain and suffering.

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a detainee who has been permitted to proceed in forma pauperis. As a detainee seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[4] See *Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir.1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

---

[4] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Likewise, a complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft*, 556 U.S. at 662; *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

**2. Medical Care**

Plaintiff raises a host of claims concerning inadequate medical care. A plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts

5

with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); see *Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim).  A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016).  "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances.  Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); see *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

Here, Plaintiff states that Nurse Jodie Davis evaluated him approximately thirty-five minutes after he dislocated his knee on April 17, 2018: she checked his blood pressure, examined his knee, and provided Ibuprofen.  [doc. # 9, p. 2].  But he claims that his "knee wasn't x-rayed,"

he did not see a nurse the next day, and he did not see a physician until April 20, 2018.  *Id.*
These allegations amount to simple disagreements with the treatment he received.  See *Mathis v.*
*Alexander*, 49 F.3d 728 (5th Cir. 1995) (finding complaints of not receiving an x-ray or follow-
up examinations did "not rise to the level of deliberate indifference" because "[a] mere
disagreement with one's medical treatment is not sufficient to state a cause of action . . . .").
Moreover, Plaintiff fails to allege that any Defendant deliberately delayed his audience with a
physician.

Next, Plaintiff alleges that, while he was "prescribed 600 mg [of] Ibuprofen 3X a day" for
his back, he only receives Ibuprofen twice each day.  The amount of Ibuprofen he receives helps
his back pain, but he "constantly hurt[s]."  He asked Defendant Blackwell about receiving a third
dose and Blackwell responded, "I don't have anything on there" and "there hasn't been anything
on here for you."  Plaintiff "finally got [Blackwell] to check the med cart and he saw that
[Plaintiff] had Ibuprofen on the noon med cart and he apologized."  [doc. # 9, p. 8].

Plaintiff allegation is, essentially, that Blackwell was negligent in omitting a dose of
medication.  In that respect, "mere negligence will not suffice to support a claim of deliberate
indifference."  *Mathis* 49 F.3d at 728; see *Lee v. Richland Par. Det. Ctr.*, 483 F. App'x 904 (5th
Cir. 2012) (finding that medical staff and officials at a detention center were not deliberately
indifferent to a detainee's medical needs, even if there were a few instances of delay or error in
administering medicine).

Finally, Plaintiff alleges that, on April 30, 2018, Nurse Roberts asked him about his
shoulder and that although he replied that his shoulder was "back in place," Roberts "said there is
nothing we can do, we can't make it elastic."  Plaintiff complains that Roberts did not examine

his shoulder or order an x-ray. [doc. # 9, p. 4]. This alleged conduct does not evince deliberate indifference. Roberts did not refuse treatment or ignore Plaintiff; rather, Plaintiff disagrees with Roberts' medical opinion. See *Estelle v. Gamble*, 429 U.S. 97, 107 (1976) ("[W]hether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment."); *Varnado v. Collins*, 920 F.2d 320, 321 (5th Cir. 1991). Accordingly, all of the aforementioned claims concerning inadequate medical care should be dismissed.

**3. Deprivation of a Wheelchair and Bed**

Plaintiff alleges that, on April 18, 2018, before any medical professional evaluated his ability to walk, Defendant Kelly took his wheelchair. [doc. # 9, p. 1]. He could not walk because his knee was injured and he weighed 335 pounds. He missed one lunch because he lacked a wheelchair. He asked Kelly for a lunch tray, but Kelly told him he had to walk to the cafeteria.[5] On April 20, 2018, a physician evaluated Plaintiff's knee and found that Plaintiff could walk. [doc. #s 1; 9, p. 3].

Plaintiff also alleges that Kelly forced him to sleep on a mat on the floor from April 18, 2018, to April 30, 2018. He could not climb to the empty top bunk. He asked Kelly for a bottom bunk, but Kelly "said he didn't care." [doc. # 9, p. 1].

Plaintiff does not allege that these deprivations caused any physical injury. He may not recover compensatory damages for his alleged mental and emotional injuries absent physical

---

[5] According to Plaintiff, Nurse Roberts told Kelly that "there was nothing wrong with [Plaintiff] and that [he] had to walk to the chow hall." [doc. # 9, p. 2].

harm.  42 U.S.C. § 1997e(e).[6]  In addition, Plaintiff's remaining requests for injunctive relief are moot because he alleges that he no longer sleeps on a mat, [doc. # 9, p. 1], and that, on April 20, 2018, he no longer required a wheelchair, [doc. #s 1; 9, p. 3].  Likewise, he alleges that he no longer sleeps on the floor.  [doc. # 9, p. 1].  See *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001).  These claims should be dismissed.

## 4. LaSalle Corrections

Private prison management companies may not be held vicariously liable for the civil rights violations of their employees or agents.  *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  They can be found liable only if they cause the constitutional violation at issue, for example, by establishing an unconstitutional policy or custom.  See *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  To recover, a plaintiff must demonstrate "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)."  *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

Here, Plaintiff first alleges that LaSalle Corrections ("LaSalle") failed to employ a dietitian to prepare safe meals for diabetics.  [doc. # 9, p. 5].  Plaintiff does not, however, allege that the absence of a dietitian caused him harm.  Instead, he faults Nurses Roberts and Bennet for either choosing not to place him on a list of diabetic detainees who may only consume certain

---

[6] See also *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005) ("[I]t is the nature of the relief sought, and not the underlying substantive violation, that controls: Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury.").

foods or for ignoring his request to be placed on the list. [doc. # 9, p. 7]. In fact, he attaches a Jackson Parish Correctional Center menu suggesting that LaSalle does provide food substitutions for diabetic inmates. [doc. # 9-1, p. 2]. To the extent Plaintiff claims that LaSalle violated—rather than followed—its own policy of providing food substitutions for diabetic inmates, the violation of a prison policy or regulation, without more, does not amount to a constitutional violation. See *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).

Plaintiff next alleges that LaSalle does not provide grievance forms. [doc. # 9, p. 6]. Even construing this allegation in Plaintiff's favor, he fails to state a plausible claim on which relief can be granted because he also alleges, repeatedly, that he has filed multiple grievance forms and even intends to file more. [doc. # 4, pp. 2, 7-10, 12]. More importantly, he does not allege that this alleged policy or practice caused any constitutional violation. Likewise, his similar allegation that LaSalle does not provide copies of filed grievances or filed requests for medical care, [doc. # 9, p. 6], does not state a plausible claim because this alleged practice or custom did not cause any of Plaintiff's alleged constitutional deprivations.[7]

Relatedly, Plaintiff alleges that LaSalle fails to respond to grievances. A plaintiff, however, does "not have a constitutional right to have his grievances resolved in his favor or to have his claims reviewed pursuant to a grievance process that is responsive to his perceived injustices . . . ." *Burgess v. Reddix*, 609 F. App'x 211 (5th Cir. 2015); see *Taylor v. Cockrell*, 2004 WL 287339 at *1 (5th Cir. 2004) (holding that "claims that the defendants violated . . .

---

[7] Rather than a claim on which he seeks relief, his statements about the lack of copies appear to be in response to the Court's prior instruction to provide copies of any filed grievances or sick call requests. [See doc. # 8]. While copies of the documents the Court recommended Plaintiff to file would aid the Court in evaluating his allegations, he only needed to provide copies he possessed or could diligently obtain through means other than discovery.

constitutional rights by failing to investigate . . . grievances fall short of establishing a federal constitutional claim."); *Geiger*, 404 F.3d at 371.

Finally, Plaintiff claims that Lasalle is responsible for "the improper use of mace to punish" inmates. [doc. # 9, p. 6]. Plaintiff does not, however, allege that *he* was improperly sprayed with mace; in other words, this alleged practice was not the moving force behind any alleged constitutional deprivation. Accordingly, Plaintiff's claims against LaSalle should all be dismissed.

**5. Supervisory Officials**

"Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex*., 977 F.2d 924, 929 (5th Cir. 1992). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div*., 37 F.3d 1146, 1150 (5th Cir. 1994). "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).

Here, Plaintiff alleges that Warden Timmy Ducote, Andy Brown, and Assistant Warden David Brazzell are responsible for the lack of a dietitian, for not ensuring that a physician is present daily, for failing to respond to grievances, for failing to provide copies of filed grievances, and for failing to provide a bed. [doc. #s 4, pp. 8-9; 9, pp. 6-7]. These claims should all be dismissed for reasons discussed above.

Plaintiff also alleges, in conclusory fashion, that Defendants Timmy Ducote, Andy Brown, and David Brazzell are responsible for failing to maintain a physician at the facility every day. He does not, however, allege that he was ever denied medical care because of this alleged

policy or practice.  Otherwise stated, he does not allege that any Defendant implemented a policy or practice that *caused* the constitutional deprivations he alleges.[8]  This claim is entirely conclusory and should be dismissed.

## 6. Verbal Threats

Plaintiff alleges that, on April 18, 2018, Defendant Kelly threatened to spray him with mace.  [doc. # 9, p. 1].  Verbal threats, without more, do not support a claimed constitutional violation.  *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983).  Further, allegations of mere verbal abuse by prison guards simply do not give rise to a cause of action under Section 1983.  *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993), *Siglar*, 112 F.3d at 191.  Plaintiff does not state a claim of constitutional dimension.

To the extent Plaintiff seeks to raise an assault claim under Louisiana law, he does not allege that Kelly's threat caused any physical injury.  Thus, under 42 U.S.C. § 1997e(e),[9] Plaintiff may not recover any compensatory damages.[10]  Plaintiff's claim should be dismissed.

---

[8] Of note, prisoners are not constitutionally entitled to the best medical care that money can buy.  *Mayweather v. Foti*, 958 F.2d. 91 (5th Cir. 1992).

[9] Section 1997e(e) is not limited to claims arising under federal law; rather, it applies to claim "brought" in a "Federal civil action . . . ."  42 U.S.C. § 1997e(e); see *Wagner v. Texas Dep't of Criminal Justice*, 2018 WL 2074142, at *7 (N.D. Tex. May 3, 2018) (citing *Hood v. Balido*, 2002 WL 1285200, at *3 (N.D. Tex. June 4, 2002)).

[10] Plaintiff does not seek injunctive relief on this claim.  Even assuming he did, and assuming further that he implies that Kelly will threaten him again, "the mere possibility of future consequences is too speculative to give rise to a case or controversy."  *Bailey v. Southerland*, 821 F.2d 277, 279 (5th Cir. 1987).

## Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff Carlos Scott's claims against Timmy Ducote, Andy Brown, David Brazzell, Scott Blackwell, Kevin Kelly, and LaSalle Corrections be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state claims on which relief can be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 13th day of August, 2018.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

13