## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

CARLOS SCOTT #2018040187      CASE NO. 3:18-CV-00628 SEC P

VERSUS      JUDGE TERRY A. DOUGHTY

UNKNOWN DEFENDANTS      MAG. JUDGE KAREN L. HAYES

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion to Dismiss for failure to state a claim upon which relief can be granted, [doc. # 65], filed by defendant Pamela Hearn, and a Motion for Summary Judgment filed by defendants Deanna Harris, Laura Roberts, and Crystalynn Bennett. [doc. # 62]. Plaintiff does not oppose either motion. For reasons set forth below, it is recommended that the Motion to Dismiss be GRANTED and the Motion for Summary Judgment be GRANTED.

### Background

Pro se plaintiff Carlos Scott filed the instant civil rights complaint pursuant to 42 U.S.C. § 1983 on April 30, 2018.[1] [doc. # 1]. Scott is an inmate in the custody of Louisiana's Department of Corrections, incarcerated at Jackson Parish Correctional Center ("JPCC"). He has brought claims against multiple defendants arising from the claimed failure of the defendants to provide him with adequate medical care and treatment. *Id*.

On May 31, 2018, Scott filed his first proper complaint. [doc. # 4]. The complaint named Nurse Laura Roberts, Warden Timmy Ducote, Assistant Warden David Brazzell, Sheriff Andy

---

[1] The initial complaint was deficient and the court ordered him to correct it.

Brown, Deanna Harris, Scott Blackwell, Kevin Kelly, LaSalle Parish Correctional Center, and Nurse Christy Bennett as defendants. Scott wants the court to provide him with proper medical treatment, a diet suitable for diabetics at JPCC, compensation for pain and suffering, and compensation for the violation of his civil rights.

On June 19, 2018, the court commanded Scott to amend his § 1983 complaint to identify facts supporting his claim as to how medical staff were deliberately indifferent to a substantial risk of serious harm to him and to identify the medical provider(s) by name. [doc. #8]. On July 18, 2018, Scott filed an amended complaint but failed to identify the physician who treated him.

On August 13, 2018, the undersigned issued a report and recommendation that recommended dismissing Scott's claims against Timmy Ducote, Andy Brown, David Brazzell, Scott Blackwell, Kevin Kelly, and LaSalle Corrections as frivolous and for failing to state claims upon which relief can be granted. [doc. # 11]. In the same report and recommendation, the undersigned recommended retaining Scott's claim against Roberts concerning a lack of a knee brace, his claim against Harris for refusing care after Scott dislocated his knee, his claim against an unknown physician (later identified as Hearn) for refusing to treat his shoulder, his claims against Bennett and Harris for refusing to provide pain medication, and his claim against Roberts and Bennett for failing to place him on a list of inmates who receive meals safe for diabetics to proceed. *Id*.

On May 14, 2019, Harris, Bennett, and Roberts filed a motion for summary judgment. [doc. # 62]. They attach two exhibits: the deposition of Scott and the JPCC medical records. [doc. # 62-2, doc. #62-3].

On May 20, 2019, Dr. Pamela Hearn filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [doc. # 65].

After mailings sent to Scott were returned as undeliverable, he notified the court of his change in address on June 10, 2019. [doc. # 73]. After subsequent mailings to Scott were also returned as undeliverable, he again notified the court of his change in address on August 20, 2019. [doc. # 82]. Scott has not opposed either motion.

The undersigned addresses the motion to dismiss and the motion for summary judgment in turn.

## The Motion to Dismiss

Scott claims Dr. Pamela Hearn deprived him of medical treatment for his shoulder. Hearn moves to dismiss pursuant to Rule 12(b)(6). The motion is unopposed.

In the April 30 complaint, Scott alleges that on April 20, 2018, he saw a physician at JPCC who examined his injured right knee and took his vitals, including his blood sugar.

In the May 31 complaint, Scott alleges that on April 30, 2018, he saw a doctor to whom he complained his shoulder was injured. He says he was denied treatment since the unidentified doctor informed him he would have to fill out a separate sick call form for his shoulder.

On August 24, 2018, Scott named Pamela Hearn as the physician. He amended the relief he sought to include a plea for the court to grant him injunctive relief for medical treatment and medical evaluation. *Id.*

Hearn's argument in favor of a motion to dismiss is two-fold. First, Hearn argues the claims against her are premature because Scott has not provided these claims to a medical panel for

review. Second, Hearn argues that since a medical malpractice complaint was not filed within one year of the alleged act or omission of medical treatment, the claim is prescribed.

### 1. Rule 12(b)(6) standard

Federal Rule of Civil Procedure 12(b)(6) sanctions dismissal where the plaintiff fails to state a claim upon which relief can be granted. A pleading states a claim for relief when, *inter alia*, it contains "a short and plain statement…showing that the pleader is entitled to relief…" FED.R.CIV.P. 8(a)(2). To withstand a 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is facially plausible when it contains enough factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility does not equate to possibility or probability; it lies somewhere in between. *See Iqbal*, 556 U.S. at 678. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 536.

In deciding whether the complaint states a valid claim for relief, a court accepts all well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). But the same presumption does not extend to legal conclusions. *Iqbal*, 556 U.S. at 678. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action to make out a valid claim." *City of Clinton, Ark. V. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010).

4

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678. A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly*, 550 U.S. at 556. Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013)(internal question marks omitted). Consistent with the motion to dismiss standard above, a "section 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. The medical malpractice claim**

**a. Premature**

Pamela Hearn, the moving defendant, first argues that Scott's allegations should be dismissed because they are premature. [doc. #66, pgs. 4-6]. Hearn alleges she is a healthcare provider within the definition of the Louisiana Medical Malpractice Act ("LMMA") and therefore the claim must first be brought before a medical review panel. *Id*. If a lawsuit is filed in a matter governed by the LMMA prior to the outcome of the medical review board, the lawsuit must be dismissed. *See, e.g., Richardson Advanced Cardiovascular Systems, Inc.*, 865 F.Supp. 1220, 1221 (E.D. La. 1994); *Miller v. Griffin-Alexander Drilling Co.*, 685 F.Supp. 960, 967 (W.D. La. 1988), aff'd, 873 F.2d 809, 814 (5th Cir. 1989); *Marcel v. Rehabcare Group, Inc.*, 2008 WL 4657258, at

5

*2 (E.D. La. Oct. 20, 2008); *Roberts v. Russo*, 400 So.2d 354, 356 (La. App. 4th Cir. 1981)(citing *Everett v. Goldman*, 359 So. 2d. 1256 (La. 1978)); *Todd v. Angelloz*, 844 So.2d 316, 318-20 (La. App. 1 Cir.); *Williamson v. Hosp. Service District No. 1 of Jefferson*, 888 So.2d 782, 785 (La. 2004).

The LMMA requires a person alleging a malpractice claim against a qualified health care provider to submit the claim to a medical review panel prior to filing a lawsuit. *Hutchinson v. Patel*, 637 So. 2d 415, 419 (La. 1994)(citing LA. REV. STAT. ANN. § 40:1299.47)("[N]o action for malpractice against a qualified health care provider…may be commenced in a court of law before the complaint has been presented to a medical review panel and the panel has rendered its expert opinion on the merits of the complaint, unless the parties agree to waive this requirement.") Malpractice is defined by La.Rev.Stat. § 40:1299.41A(8) as follows:

> Malpractice means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient.

Malpractice actions are based on negligence and seek to compensate victims for injuries suffered when health care providers breach the applicable standard of care. *Bauman Tenet Health Systems Hospitals, Inc.*, 2000 WL 1219151, at *4 (E.D. La. Aug. 25, 2000). A healthcare provider is "a person…licensed or certified by this state to provide health care or professional services as a physician." LA. REV. STAT. ANN. § 40:1299.41(A)(10).

Scott's medical malpractice claim(s) against Hearn is covered by the LMMA because Scott's allegation—that Hearn failed to provide him with medical care for his shoulder—is a negligence claim. Hearn is a qualified health care provider as evidenced by the letter from the Louisiana Patient's Compensation Fund. Scott has neither alleged nor provided any evidence that he submitted his claim

against Hearn to a medical review panel or that the parties agreed to waive this requirement, as mandated by the LMMA, before he filed his complaint in this court. Therefore, Scott's malpractice claim(s) against Hearn must be dismissed for failure to exhaust administrative remedies.

### b. Prescription

The LMMA provides that malpractice claims against health care providers must be filed within one year of an alleged negligent act or omission or within one year of discovery of an alleged negligent act or omission. La. Rev. Stat. Ann. § 9:5628(A). Pursuant to Louisiana law, "[p]rescription runs against all persons unless an exception is established by legislation." *Lebreton v. Rabito*, 714 So.2d 1226, 1228 (La. 1988)(citing La. Civ. Code art. 3467). When the plaintiff's petition shows on its face that the prescriptive period has expired, the burden shifts to the plaintiff to demonstrate suspension or interruption of prescription. *Parrish v. Superior Energy Services, LLC*, 2008 WL 1988800, at *3 (May 2, 2008 E.D La.).

Scott has failed to demonstrate suspension or interruption. Because the incident he alleges occurred in late April 2018, he had until late April 2019 to bring his claim before a medical review panel. Yet he failed to bring a claim within the one-year period. Therefore, Scott's malpractice claim(s) against Hearn must be dismissed with prejudice.

## Motion for Summary Judgment

Regarding the defendants moving for summary judgment, Scott claims the following: (1) Roberts failed to allow him to wear a knee brace; (2) Harris failed to provide him with medical care for a knee injury; (3) Harris failed to provide him with ibuprofen; (4) Bennett failed to provide him with ibuprofen; and (5) Roberts and Bennett failed to place him on the list of inmates who receive meals safe for diabetics. The motion is unopposed.

## A.  Rule 56 standard

Federal Rule of Civil Procedure 56(a) mandates summary judgment "if the movant shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2511 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Id.* at 248.

The moving party may meet its burden in demonstrating the absence of a genuine issue of material fact by pointing out the record contains no support for the non-moving party's claim. *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in his favor. *Anderson*, 477 U.S. at 255. The court need consider only the cited materials, but it may consider other materials in the record. FED. R. CIV. P. 56(c)(3). While courts will resolve factual controversies in favor of the nonmoving party, an actual controversy exists only when both parties have submitted evidence of contradictory facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc). There can be no genuine dispute as to a material fact when a party fails to make a showing to establish

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322-23.

While the facts are to be reviewed with all inferences drawn in favor of the non-moving party, factual controversies are resolved in favor of the non-movant only when there is an actual controversy. That is, when both parties have submitted evidence of contradictory facts. *McCallum Highlands, Limited v. Washington Capital Dus, Inc.*, 66 F.3d 89 (5th Cir. 1995). In this case, plaintiff has failed to submit evidence of any facts contradictory to those submitted by the moving party. In the absence of an opposition to the motion, this court must accept the evidence presented by the defendant and the statements of undisputed facts as true. *Celotex Corp.*, 477 U.S. at 317. Thus, for purposes of this motion, those facts are deemed admitted.

### B. Relevant Facts[2]

1. Upon being booked into JPCC, Scott was not wearing a knee brace and did not have it with him.

2. When Scott asked if he could have his Wal-Mart knee brace, he was informed the brace needed to be cleared by Roberts.

3. Scott was told he couldn't have a knee brace because it might contain metal.

4. Scott failed to produce a prescription for a knee brace and never had the knee brace brought to the prison to determine whether it would be allowed.

5. Scott's knee was dislocated at least twice before he was incarcerated at JPCC.

6. Since he was not having any problems with his knee, he simply did not wear the brace or have it in his possession at the time of his arrest and subsequent booking at JPCC.

---

[2] The court's recitation of relevant facts generally tracks defendants' Statement of Uncontested Material Facts, as supplemented by the court's independent review of plaintiff's deposition and the record. To the extent there is a conflict in the evidence in the context of the present motion, the court necessarily credits plaintiff's version of events.

7. Scott's knee unexpectedly dislocated. He called for assistance but did not get an immediate response.

8. Scott admitted he would not have been wearing the knee brace, if he had it in the prison, at the time his knee dislocated.

9. Scott put his knee back in place. He then asked for help through the flap but Harris told him to get away.

10. Scott did not know whether Harris called for medical assistance.

11. Scott had no idea what Harris may have done to report or not report his need for medical care.

12. But after Scott talked to Harris, Sgt. Jackson came to Scott's room and asked Scott what was wrong.

13. Jackson came to Scott's dorm fifteen to twenty minutes after Scott asked Harris for medical care.

14. Nobody informed Scott that help was on the way.

15. When Scott told Jackson his knee was dislocated, Jackson brought him a wheelchair.

16. Upon seeing the nurse, Scott told her what had happened. The nurse examined his knee, took his blood pressure, gave him ibuprofen, and stated that she would let the nurse coming on in the morning know what had happened.

17. Harris did not give him a dose of ibuprofen that was to be taken at lunch. Scott received his medication later in the day between 1:00 p.m. and 3:30 p.m.

18. Harris did not have anything else to do with Scott's medications.

19. Scott does not recall how many times Bennett denied him ibuprofen but admitted the failure to have ibuprofen on the pill cart happened four to five times.

20. Scott does not say what injury he suffered as a result of the occasions on which Bennett did not give him ibuprofen.

21. Scott testified he told Bennett and Roberts that he was not getting diabetic meals.

22. Bennett and Roberts told him there were no diabetic meals available to inmates.

23. Scott claims he was unable to get proper meals from April 15, 2018, to April 23, 2018.

24. Scott could only eat 65% of his meals.

25. Scott testified that he would go to bed hungry and lost an unspecified amount of weight.

26. Scott received a blood sugar checkup on April 20.

## C. Deliberate indifference

In their answer and brief, defendants raise the defense of qualified immunity to 42 U.S.C. § 1983. The court notes that the time frame for which Scott is seeking damages for the alleged injuries is that period of time when he was a pretrial detainee at Jackson Parish jail, not a convicted prisoner who had already been adjudicated guilty. Pretrial detainees, as opposed to convicted prisoners, are those individuals who have been charged with a crime but who have not yet been tried on the charge. *Bell v. Wolfish*, 441 U.S. 520, 523, 99 S.Ct. 1861, 1865, 60 L.Ed.2d 447 (1979). The undersigned notes this distinction because pretrial detainees and convicted prisoners look to different constitutional provisions for their respective rights to basic needs such as medical care and safety. The constitutional rights of a convicted state prisoner spring from the Eighth Amendment's prohibition on cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed 2d 251 (1976). Conversely, the constitutional rights of a pretrial detainee flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment. *See Bell, 441 U.S. 520; Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996).

In *Hare*, the Fifth Circuit held (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement and (2) that a state jail official's liability for episodic acts cannot attach unless the official had subjective knowledge of a

substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk. 74 F.3d at 650.

Deliberate indifference in the context of an episodic failure to provide reasonable medical care to a prisoner means that: (1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the official actually drew that inference; and (3) the official's response indicates that the official subjectively intended that harm to occur. *Thompson v. Upshur County, Tx.,* 245 F.3d 447, 458–59 (5th Cir.2001). "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not, is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice,* 239 F.3d 752, 756 (5th Cir.2001). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson,* 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir.1997). "[A] delay in medical care violates the Eighth Amendment only if it is due to deliberate indifference and results in substantial harm." *Gregory v. McKennon,* 430 Fed.Appx. 306, 310 (5th Cir.2011) (internal quotation marks omitted). To establish deliberate indifference to medical needs, a plaintiff must show that the official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice,* 239 F.3d 752, 756 (5th Cir.2001).

### D.  Refusal to allow a knee brace

Scott claims that Nurse Roberts refused to allow him to wear a knee brace, thereby causing him discomfort in his knee. Because he claims he suffered physical discomfort, this is an inadequate

medical care claim. As discussed above, Scott must show that Roberts acted with deliberate indifference.

The summary judgment record shows that Scott never presented the knee brace for inspection and approval for use inside the prison and never brought a prescription for a knee brace to the prison. Because Scott did not demonstrate how the lack of a knee brace would result in serious harm to him, there is no way Roberts intended to cause him serious harm or acted in reckless disregard of Scott's medical needs. Moreover, as a matter of law, the failure to provide a knee brace does not rise to the level of a constitutional violation. For example, in *Johnson v. Talley*, a prisoner argued the prison physician acted with deliberate indifference to his medical needs when he was denied a knee brace, among other things. 243 Fed. Appx. 10 (5th Cir. 2007). Yet the Fifth Circuit found this did not establish an Eighth Amendment violation. *Id.* Thus, based on the factual record and the law, Roberts is entitled to summary judgment on this issue in the present case.

### E.  Failure to provide medical care after dislocating the knee

Scott claims Harris refused to provide him with medical care after he dislocated his knee while at the prison. To prevail on this claim, Scott must establish that the refusal or delay in providing medical care evinces deliberate indifference.

In the present case, Scott's own testimony bears out that he received medical assistance fifteen to twenty minutes later. Though the facts do not establish Harris herself called for medical assistance, Scott cannot show he suffered an injury because of her response to him because he only had to wait fifteen to twenty minutes for Sgt. Jackson to arrive and take him to see a nurse. A fifteen to twenty minute delay does not evince wanton disregard for Scott's rights. In fact, such a delay is perfectly reasonable. *See, e.g., Storther v. Booty*, 2011 WL 3115540, at *4 (W.D. La. Jun. 15, 2011)("It is

common knowledge that people in the 'free world' outside of jail typically have to wait over fifteen or twenty minutes to be seen by a nurse or emergency room physician"). Finally, Scott contends Harris used hostile language, telling him to get away from the "f'ing flap or the damn [flap]." Using foul language does not rise to the level of constitutional violation. Accordingly, Harris is entitled to summary judgment on this claim.

### F.  Failure to provide ibuprofen

Scott alleges Harris did not give him his ibuprofen on time once. In Scott's deposition, he testified that there was a short delay in obtaining his medication on this occasion. Specifically, he testified that he complained to Harris between 1:00 p.m. and 2:00 p.m. and received his medication before 3:30 p.m. Such a small delay does not evince the reckless indifference needed to establish a constitutional violation, nor does Scott show that the delay resulted in a substantial harm. *See Weddle v. Collins*, 53 F.3d 1281, 1995 WL 295932, at *2 (5th Cir. 1995)(holding a two-month delay for an injured prisoner to obtain pain medication did not violate the Eighth Amendment); *Reeves v. Lynch*, 2017 WL 9285522, at *5 (E.D. Tex. Jun. 6, 2007)(finding a seven-day delay in obtaining pain medication did not rise to the level of a constitutional violation). Accordingly, Harris is entitled to summary judgment on this claim.

Scott also alleges Bennett did not give him his ibuprofen at noon as prescribed on more than four to five occasions. Still, based on his deposition, it appears Scott received all other doses of ibuprofen as prescribed. There is no factual basis upon which Scott can show deliberate indifference on this claim because occasionally failing to provide pain medication does not make out a claim of deliberate indifference. *See James v. UTMB Medical Center*, 426 Fed. Appx. 297, 298 (5th Cir. 2011)(delays in

14

providing or renewing pain medication on multiple occasions does not state a cognizable deliberate indifference claim). Accordingly, Bennett is entitled to summary judgment on this claim.

### G.  Failure to place him on list of inmates who receive meals safe for diabetics

Scott's final claim is that Roberts and Bennett failed to place him on the list of inmates who receive meals safe for diabetics. Specifically, he claims that from April 15, 2018, until April 23, 2018, he received unsafe meals without medication or a blood sugar test. Scott admits he ate 65% of the meals and said he had a blood sugar test on April 20. Scott claims to have suffered hunger and loss of weight, though he does not specify how much weight he lost.

Inmates have a constitutional right to receive reasonably adequate food while in prison. *Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004)(quoting *Farmer*, 511 U.S. at 832). The constitution requires only that prison authorities provide an inmate with the basics in this regard, including well-balanced meals containing sufficient nutritional value. *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999)(quoting *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986)). Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation. *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1996)(stating that a prisoner who missed about fifty meals in five months and lost fifteen pounds was not denied anything close to a minimal measure of life's necessities).

In the present case, given that Scott was able to eat more than half the meal, the food he received satisfies the constitutional requirements for an inmate's diet. The undersigned does not hesitate in finding the meals provided to him do not evince a denial of life's necessities. Moreover, it is important to emphasize that Scott only alleges he suffered this harm for *one week*; such a minor deprivation for a short period of time is substantially less than the threshold laid out by the Fifth Circuit in *Talib*.

Assuming for purposes of this motion that Roberts and Bennett were the persons charged with making the decisions regarding inmate meals, the fact they chose not to provide him with special meals does not rise to the level of deliberate indifference to Scott's medical needs. *Estelle*, 429 U.S. at 106; *see also Crowley v. Meyers*, 2002 WL 31180743, at *2 (N.D. Ill. Sep. 30, 2002)(finding that the failure to grant an inmate a diabetic meal did not exhibit deliberate indifference to his medical needs). Nor does Scott show that giving him only one blood sugar test per week rises to the level of deliberate indifference. In sum, the defendants are entitled to summary judgment on this claim.

<u>Conclusion</u>

For the foregoing reasons,

**IT IS RECOMMENDED** that Harris, Roberts, and Bennett's motion for summary judgment [doc. # 62] be **GRANTED AND DISMISSED WITH PREJUDICE** and that Hearn's motion to dismiss for failure to state a claim [doc. # 65] be **GRANTED AND DISMISSED WITH PREJUDICE.**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before making a final ruling.

**Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its**

**service shall bar an aggrieved party, except on grounds of plain error, from attacking on appeal the unobjected-to factual findings and legal conclusions accepted by the District Judge.**

In Chambers, Monroe, Louisiana, this 8th day of October 2019.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE